UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

Plaintiff,

v.

FEDERICO ZAVALA-QUEZADA,

Defendant.

_____/

No. 1:10-CR-161

HON. PAUL L. MALONEY
CHIEF DISTRICT JUDGE

## PLEA AGREEMENT

This constitutes the plea agreement between Federico Zavala-Quezada and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. **The Defendant Agrees to Plead Guilty.** In the Western District of Michigan, the Defendant, Frederick Zavala-Quezada, agrees to plead guilty to Count 1 of the Indictment. Count 1 charges a conspiracy to distribute marijuana, in violation of Title 21, United States Code, Section 841(a).

2. **The Defendant Understands this Crime.** In order for the Defendant to be guilty of this offense, the following must be true:

   A. An illegal agreement (that is, a conspiracy) to distribute at least one thousand kilograms or more of marijuana existed between at least two persons;

   B. The Defendant knew the purpose of the conspiracy and knowingly and intentionally joined the illegal agreement.

The Defendant is pleading guilty because he is guilty of the charge described above.

3. <u>The Defendant Understands the Penalty</u>. The defendant realizes that this offense is punishable by a minimum term of ten (10) years' imprisonment; a maximum sentence of LIFE imprisonment; a maximum fine of $4,000,000; a period of at least five years, and up to life, of supervised release; and a mandatory $100 special assessment. The Defendant agrees to pay the special assessment at or before the time of sentencing unless the Defendant affirmatively demonstrates to the Court that he lacks the ability to pay. The Defendant also understands that he will be deported from the United States as a result of his conviction in this case.

4. <u>Stipulations.</u> The Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts and law which need not be proven at the time of the plea or sentencing:

On June 2, 2010, law enforcement officers stopped C.L. as he drove a vehicle from the area of 1667 Whitewood, Wyoming, Michigan. C. L. was in possession of approximately 6 pounds of marijuana. Based on C.L.'s statements and other police investigation, police officers secured a search warrant for 1667 Whitewood. 1667 Whitewood is the residence of Elias Pantoja, Jr..

The search of Pantoja's residence resulted in the seizure of approximately 300 pounds of marijuana that had been vacuum sealed into pound and multi-pound units for resale. Officers also uncovered narcotics paraphernalia and documents that evidenced the sale of controlled substances.

Pantoja was read *Miranda* warnings and made a statement to law enforcement officers. Pantoja admitted that he sold marijuana and that he was a paid courier for an organization that brought large loads of marijuana from Chicago to Grand Rapids.

Pantoja admitted that he made 7 trips from Chicago to Grand Rapids transporting between 100 and 700 pounds of marijuana during each trip. Pantoja admitted that he was paid to store some of the marijuana at 1667 Whitewood. Pantoja identified photographs of Jesus Lamas and Frederick Zavala-Quezada as the persons who were paying him to bring the marijuana to Michigan. Pantoja stated the 300 pounds of marijuana located in his residence was part of a 700 pound load of marijuana that he had brought to Michigan approximately one week earlier. Pantoja estimated that he had transported between 3,500 and 4,500 pounds of marijuana between Chicago and Grand Rapids during the previous six months.

Pantoja claimed that he had sold 6 pounds of marijuana earlier that day and took the more than $5,000 in proceeds to Jesus Lamas and Frederick Zavala-Quezada at 753 Liberty Street. Police officers obtained a search warrant for 753 Liberty in the City of Grand Rapids and executed it during the evening of June 2, 2010.

Frederick Zavala-Quezada was present in the residence when the police arrived. In a bedroom occupied by Federico Zavala-Quezada, investigators found a wallet containing his identification. Located in this same bedroom were drug ledgers, and approximately $1,000.00 in United States currency that was banded together in a manner commonly used by drug traffickers. Also located in this same bedroom was a box containing a child's toy that had been resealed in an attempt to make it appear new. Located inside this box was approximately $65,000.00 in U.S. currency, which had been wrapped in tinfoil and vacuum sealed in packages identified as "5" "10" and "20" indicating the amount of currency in thousands. Officers recovered an additional 300 pounds of marijuana in the basement of the residence.

Lamas was also present at 753 Liberty and made statements indicating that his job was to collect money for persons who were involved in selling marijuana. Lamas admitted he was often at 753 Liberty, but claimed he lived at 820 Edsel in the City of Kentwood. Based on Mr. Lamas's statements and other investigation, police officers secured a search warrant for 820 Edsel in the City of Kentwood. During the execution of that search warrant, officers located almost $27,000 hidden in a cereal box in a bathroom.

For purposes of computing the Sentencing Guidelines in this case, the parties agree that the Defendant was responsible for the distribution of between 1,000 and 3,000 kilograms of marijuana.

5. <u>The United States Attorney's Office Agrees</u>.

A   to seek dismissal of the remaining counts in the Indictment;

B   to bring no further charges arising out of the Defendant's involvement in the charged conspiracy in the Western District of Michigan for offenses occurring before the date of this agreement;

C.  not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

6   <u>The Sentencing Guidelines Apply</u>.   The Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory,

the Court must consult the Guidelines and take them into account when sentencing the Defendant. The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum [and minimum] penalties described elsewhere in this Agreement. The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

7.  <u>There is No Agreement About the Final Sentencing Guidelines Range</u>. The Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range other than as implicated by the stipulations in paragraph 4 above. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

8.  <u>Waiver of Constitutional Rights</u>. By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the Defendant's guilty plea, there will be no trial. At

any trial, whether by jury or by the Court, the Defendant would have had the following rights:

    a. The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

    b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

    c. The right to confront and cross-examine witnesses against the Defendant.

    d. The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

    e. The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

    9. <u>Waiver of Appeal and Collateral Attack.</u> The Defendant understands that the law affords him the right to appeal his conviction and the sentence imposed. Acknowledging this, the Defendant knowingly waives the right to appeal his conviction and any sentence that is within or below the guideline range or the statutory mandatory minimum, whichever is greater. The Defendant further gives up his right to appeal the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. §

3742 or any ground whatever, in exchange for the concessions made by the United States Attorney's Office in this plea agreement, except that the Defendant may appeal on grounds, preserved at sentencing, that the Court incorrectly determined the guideline range. The Defendant also waives the right to challenge his conviction and sentence and the manner in which his sentence was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, § 2255. This agreement does not affect in any way the right of the U.S. Attorney's Office to appeal the sentence imposed by the Court.

10. <u>The Court is not a Party to this Agreement</u>. The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The Defendant understands that no one – not the prosecutor, the Defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum.

11. <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by the Defendant. This agreement does

not apply to any pending forfeiture proceedings, and shall not preclude any past, present, or future civil or forfeiture actions.

12. <u>This is the Complete Agreement</u>. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

Respectfully submitted,

DONALD A. DAVIS
United States Attorney

_11-29-2010_
Date

MARK V. COURTADE
Assistant United States Attorney

United States v. Zavala-Quezada
Plea Agreement -- Final Page

    I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

Date 11/29/10

*Federico Zavala*
FEDERICO ZAVALA-QUEZADA
Defendant

    I am Federico Zavala-Quezada's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date 11/29/10

Attorney for Defendant

9